UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| A. MICHAEL AMSTADTER, BONITA AMSTADTER, | |
| Plaintiffs, | NO. CIV. 2:09-2826 WBS EFB |
| v. | ORDER OF RECUSAL |
| BANK OF AMERICA, BANK OF AMERICA HOME LOANS, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), NDEX WEST, and DOES 1-50, Inclusive, | |
| Defendants. | |

----oo0oo----

Because the spouse of one of my law clerks owns a small amount of stock in the Bank of America, I must recuse myself from this case. This memorandum is written to explain why I have reluctantly come to that conclusion.

Under 28 U.S.C. § 455(b)(4), a "justice, judge, or magistrate judge of the United States" is required to disqualify himself if "[h]e knows that he, individually or as a fiduciary, or his spouse or minor child residing in his

1

household, has a financial interest in the subject matter in controversy or in a party to the proceeding." With several itemized exceptions, including mutual funds the judge does not manage and government securities, § 455(d)(4) defines "financial interest" to include "ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party." Accordingly, a judge must recuse himself from any case in which he owns stock in a corporate party or in a parent corporation of a corporate subsidiary party.

In addition to mandating recusal because of a judge's financial interests, § 455(b)(4) expressly extends the disqualification of a judge to include financial interests owned by the judge's spouse or minor children residing with the judge. Neither § 455(b)(4) nor its relevant legislative history, however, even suggest that a judge should be concerned if his staff, including his law clerks, have a financial interest in a party. If Congress felt that the appearance of impartiality could be threatened if a judge's law clerk has a financial interest in a party, it could have legislated accordingly when it made the pertinent amendments to § 455 in 1974 or in the more than thirty-five years that have followed. It has not, and such congressional inaction should not be so easily disregarded.

Not only is disqualifying law clerks from working on cases because of financial interests at odds with the express limitations in § 455(b)(4), expansion of such disqualification to law clerks would seem to be wholly unnecessary to preserve the impartiality of the judiciary. Disqualification of a judge under

§ 455(b)(4) preserves the appearance of impartiality because it assures the parties and the public that even a speculative or hypothetical financial interest held by the judge or his immediate family will not influence the judge's decision in a case. The rationale behind § 455(b)(4) does not apply to the work of a law clerk. Judges, not law clerks, decide cases.

Nonetheless, in 1995 the Judicial Conference of the United States went ahead and enacted the "Codes of Conduct for Judicial Employees" and extended the disqualifications of § 455(b)(4) to judges' staff attorneys and law clerks. Specifically, canon 3F(2) of the Code states:

> Certain judicial employees, because of their relationship to a judge or the nature of their duties, are subject to the following additional restrictions: (a) A staff attorney or law clerk should not perform any official duties in any matter with respect to which such staff attorney or law clerk knows that: . . . (iii) he or she, individually or as a fiduciary, or the spouse or minor child residing in his or her household, has a financial interest in the subject matter in controversy or in a party to the proceeding.

This canon adopts the definition of "financial interest" set forth in § 455(d)(4) and states that "[a] judicial employee who is subject to canon 3F(2) should keep informed about his or her personal, financial and fiduciary interests and make a reasonable effort to keep informed about such interests of a spouse or minor child residing in the judicial employee's household." Code of Conduct for Judicial Employees, Canon 3F(4).

Given its adoption of the definition of "financial interest" that applies to any interest, "however small," not only did the Judicial Conference needlessly extend § 455(b)(4) to law clerks, it also carried forth the fiction that an individual's

3

financial holdings will always be affected in any case involving a corporate party simply because the individual owns a minuscule amount of stock in that party. See S. Rep. No. 93-419 (1974) (Individual Views of Mr. Dennis of Indiana on S. 1064--Concurred in by Mr. Butler of Virginia), reprinted in 1974 U.S.C.C.A.N. 4093, 6362:

> I have serious reservations on the merits of this bill. . . . on a [] utilitarian level, it is my judgment that the approach taken in this bill is unreasonable and unrealistic. . . . The necessary effect of [mandatory disqualification for any financial interest] is that, by legislative enactment, we could have a true Daniel come to judgment--or a Learned Hand upon the bench--and if the case involved, let us say, the Exxon Corporation, and the judge owned 20 shares of common stock, which he had inherited from his parents many years before and had never particularly thought of since, he absolutely could not sit . . . . To me, an inflexible provision of this kind does not make good sense, does not make for the highest quality of justice, and represents an over-reaction to a problem which, so far as the Committee has been advised, is largely non-existent.

In Maintaining the Public Trust: Ethics for Federal Judicial Law Clerks, which the Federal Judicial Center ("FJC") published in 2002, the FJC explains:

> Like the judges they serve, law clerks should not perform official duties in matters in which they have a financial interest. [A law clerk's] work on cases in which she has a financial interest would be inconsistent with Canon 3F(2). Her judge can assign another law clerk to the matter.

Id. at 11. After my law clerk inquired into the precise restrictions canon 3F imposes, an ethics officer of the General Counsel's Office of the Administrative Office of the United States Courts advised that a law clerk with a financial interest in a party should be "screened" from the party's case, which "would mean that the screened clerk should not talk to the other

4

clerks about the case."

The ethics officer recognized that there is not an advisory opinion directly mandating such screening, but analogized to other advisory opinions that address disqualification of law clerks. For example, section 3.5-1(f) of the Compendium of Selected Opinions suggests that a disqualified law clerk should be isolated from a case in which the law clerk has an ethical conflict: "A law clerk whose spouse is an associate in a firm should be isolated from any case handled by that firm, whether the spouse actually participates in the representation or not." In the Committee on Codes of Conduct's opinion, isolation of a disqualified law clerk is a simple and effortless solution: "[T]he disqualification of a judge is far more disruptive to the administration of justice than the disqualification of a law clerk. Most judges have more than one clerk, and the matter may be transferred easily to another clerk." Committee on Codes of Conduct, Advisory Op. No. 51.

In theory, isolating one law clerk from a case and assigning any work from that case to another law clerk may seem to be an easy solution to the conflict created by canon 3F. In practice, however, the physical design of my chambers and the way in which I have determined that I can most efficiently and judiciously manage my caseload renders isolation of one law clerk impracticable. Not only is it impossible to meaningfully isolate a law clerk from every aspect of a case, I have found that conferring with all of my law clerks on a matter enables me to more correctly reach a decision. I also encourage my law clerks to freely confer with each other because it aides in their

5

development of thorough and well-reasoned work product.

The practical absurdity of isolating a law clerk from a case is further illustrated by the Committee on Codes of Conduct's explanation about how a judge should proceed if he only has one law clerk:

> If a judge has only one clerk, an arrangement may be made to trade the services of the law clerk for the services of a law clerk to another judge on the same bench.

Committee on Codes of Conduct, Advisory Op. No. 51. The recommendation to simply trade law clerks with another judge falsely assumes that law clerks are fungible commodities and ignores the disruption and imposition such arrangements would impose. Each judge's chambers functions in a unique way, and the judge's selection of and development of his working relationship with his law clerks is usually a vital component to the dynamic of chambers. Because many corporations, such as the Bank of America, are frequent parties in federal court, trading law clerks also threatens to alter the traditional role law clerks play for their judges and convert the positions into attorney pools that might lack the trust and working relationships developed in chambers.

Moreover, even when a judge attempts to isolate a law clerk from any direct involvement in cases in which that law clerk has a conflict, there is no assurance that the problems created by the canon will be avoided. Not all of the work performed by law clerks is necessarily case specific. For example, legal research in connection with a motion in one case may be later incorporated in an order on a similar motion in another case. If a law clerk has a "financial interest" in one

6

corporation, e.g., the Bank of America, could the research done by that law clerk in a case against a different bank be used in connection with a similar case against the Bank of America? Would it make a difference whether the court became aware of the similarity before or after the law clerk performed the research? These are not the kind of questions that judges and their law clerks should have to worry about, particularly when they involve a subject as grave as the very ethics that govern the conduct of judges and lawyers.[1]

     Despite the valued discourse and collaboration isolation thwarts, I undertook to isolate one of my law clerks from cases in which that law clerk has a "financial interest." The approach proved to be exceedingly impractical, counter-productive, and a hindrance to the performance of my official duties. Prudence therefore dictates that henceforth I recuse myself from all cases in which one of my law clerks has a conflict under canon 3F.

     IT IS THEREFORE ORDERED that the Clerk of the Court reassign this case to another judge for all further proceedings, making appropriate adjustments in the assignments of civil cases

---

[1] <u>Maintaining the Public Trust: Ethics for Federal Judicial Law Clerks</u> advises, and the ethics officer indicated, that a judge may request a formal advisory opinion from the Committee on Codes of Conduct about these and other questions regarding the extent to which a law clerk with a financial conflict must be isolated from a case. However, the issuance of a formal opinion usually takes three weeks, and in the meantime the work of the court must go on, motions must be decided, and cases must be managed.

1 | to compensate for such reassignment.[2]

2 | DATED:  December 21, 2009

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[2] The law clerk in question assisted me in the preparation of this Order.  If that was wrong, *mea culpa*.

8